# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL CASE NO. 1:19-cv-00158-MR

| | | |
|---|---|---|
| **CHRISTOPHER ANTHONY JUDD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **WILLIS COLBY LANGFORD, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on pro se Plaintiff's Motion for Leave to Amend [Doc. 16] and on initial review of the proposed "Superseding Amended Complaint" [Doc. 16-1]. Also pending are Plaintiff's Motion for Default Judgment [Doc. 17] and Motion to Consolidate [Doc. 18]. Plaintiff is proceeding *in forma pauperis*. [Doc. 6].

## I.    BACKGROUND

*Pro se* Plaintiff has filed a civil rights suit pursuant to 42 U.S.C. § 1983 for an incident that allegedly occurred at the Buncombe County Detention Facility ("BCDF"). The Complaint passed initial review on claims of excessive force against two Defendants. [Doc. 10].

In the proposed Superseding Amended Complaint, Plaintiff names as Defendants: BCDF employees Willis Colby Langford and Chauncey Tavares

Thicklin, and John Doe Officers 1 through 3, Deputy Sheriff Ken Varner, Nurse Jane Doe, and Buncombe County Sheriff Quentin Miller.

Construing the Superseding Amended Complaint liberally and accepting the allegations as true, Plaintiff was a pretrial detainee at BCDF at the relevant times. Nurse Jane Doe was working as the intake nurse on the night of December 23, 2018, when she attempted to coerce Plaintiff to sign a form releasing BCDF from liability for any expenses caused by Plaintiff's self-harm. Jane Doe threatened to withhold medication for Plaintiff's Xanax and heroin withdrawal if he would not sign the release form. Plaintiff initially refused to sign the form and threatened to sue but he ultimately gave in and signed the form. Jane Doe nevertheless withheld medication and did not put Plaintiff on the "detox watchlist" to have his vital signs monitored even though Xanax withdrawal is potentially fatal. [Doc. 16-1 at 7].

Defendants Thicklin and Langford forcibly removed Plaintiff from his seat without first giving him a verbal command. They began escorting Plaintiff to a cell and Plaintiff attempted to pull away to protest the fact that he had not been given medication. Plaintiff was slammed on his back with enough force to knock him unconscious. When Plaintiff came to, Defendant Langford was striking Plaintiff's face which injured Plaintiff's lips and left eye. Defendant Thicklin was applying pressure to one of Plaintiff's ankles and

made no attempt to stop Langford from striking him. Several other officers[1] were present, witnessed the incident, and made no attempt to intervene. The use of force was unnecessary, unreasonable, and excessive as Plaintiff was seated when the use of force began and the force was not preceded by a verbal command. No photographs were taken to document Plaintiff's injuries.

Plaintiff was not given immediate medical attention despite having been knocked unconscious. He was deprived of medical care by multiple officers who saw Plaintiff's head strike the floor. Those officers lied in a police report by stating that Plaintiff was offered, and refused, medical attention.

Plaintiff was placed in administrative segregation and was charged with rule violations. He was also charged with felony assault on a government employee. Although Plaintiff was appointed a lawyer to defend him on the criminal charge, he was not advised of the right to have counsel present during the disciplinary hearing which deprived him of his Sixth Amendment right to counsel. Because Plaintiff was under threat of lengthy disciplinary sanctions for denying the allegations, he "accepted responsibility for the officers [sic] injury and therefore was coerced and did not get the opportunity to view the motion picture evidence and was deprived of [his] right to Due Process of Law." [Doc. 16-1 at 8].

---

[1] These officers will be referred to as John Doe Officers 1 and 2.

3

Plaintiff filed a grievance and put Defendants on notice that he would be filing suit. Counsel also requested discovery less than 30 days after the incident occurred. BCSO nevertheless destroyed the video footage of the use of force. This destruction was intentional and interfered with Plaintiff's First Amendment right of access to the courts and facilitated the malicious prosecution for a crime he did not commit.

Plaintiff spent seven or eight days locked in his cell in administrative segregation "begging for medical attention for [his] severe withdrawal symptoms." [Doc. 16-1 at 8]. Plaintiff also reported to a John Doe Officer[2] that Plaintiff had a possible seizure and woke up on the floor with blood in his mouth from biting his tongue. That officer deprived Plaintiff of medical attention.

Sheriff Miller maintains the policy of requiring medical personnel to make people entering BCDF sign a form releasing BCDF from liability for medical costs resulting from self-injurious behavior. This is ongoing despite the harm caused to individuals' constitutional rights who enter BCDF, making it a continuing violation.

Plaintiff suffered injuries including a possible concussion, bruising to his left cheekbone, lacerations to his lips and tongue, extreme anxiety,

---

[2] This Defendant will be referred to as John Doe Officer 3.

4

mental anguish, insomnia, suicidal thoughts, feelings of hopelessness, false accusations, and malicious prosecution.

Plaintiff seeks compensatory and punitive damages totaling $20,000,000 and injunctive relief.

## II.  STANDARD OF REVIEW

Because Plaintiff is proceeding *in forma pauperis,* the Court must review the Superseding Amended Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether a complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios.  Neitzke v. Williams, 490 U.S. 319, 327-28, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a *pro se* complaint raising civil rights issues."). However, a *pro se* complaint must contain sufficient facts "to

raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); see Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983).

## III.  DISCUSSION

### A.  Motion to Amend

A plaintiff may amend the complaint once as a matter of course within 21 days after serving the complaint, service of a responsive pleading, or after service of a motion under Rule 12(b), (e), or (f), which is earlier. Fed. R. Civ. P. 15(a)(1). A plaintiff may subsequently amend with permission from the court which "shall be freely granted when justice so requires." Fed. R. Civ. P. 15(a)(2). The Fourth Circuit "ha[s] interpreted Rule 15(a) to provide that 'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)).

This is Plaintiff's second amendment to the Complaint. [Doc.13]. However, Defendants have not yet been served and allowing Plaintiff to amend would not result in any apparent prejudice. Nor is any bad faith evident and the amendment is not futile. Therefore, Plaintiff's Motion to Amend will be granted. The proposed Superseding Amended Complaint will be docketed as the Second Amended Complaint and it will be reviewed for frivolity.

### B.    Unsupported Claims

For personal liability, a plaintiff must show that "the official, acting under color of state law, caused the deprivation of a federal right." <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985). A short and plain statement of a claim is required. Fed. R. Civ. P. 8(a)(2). Conclusory allegations, unsupported by specific allegations of material fact are not sufficient. <u>Simpson v. Welch</u>, 900 F.2d 33, 35 (4th Cir. 1990). A pleader must allege facts, directly or indirectly, that support each element of the claim. <u>Dickson v. Microsoft Corp.</u>, 309 F.3d 193, 201-02 (4th Cir. 2002).

Plaintiff names as Deputy Ken Varner as a Defendant and he asserts claims against the Buncombe County Sheriff in his individual capacity.[3]

---

[3] The claims that Plaintiff asserts against the Sheriff in his official capacity will be addressed in Section F., *infra*.

However, Plaintiff makes no factual allegations to support claims against Varner or against the Sheriff in his individual capacity. Therefore, these claims will be dismissed.

### C. Excessive Force

The Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham v. Connor, 490 U.S. 386, 395 n.10, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). To state an excessive force claim, a pretrial detainee must show only that the force "purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 576 U.S. 389, 135 S.Ct. 2466, 2473, 192 L.Ed.2d 416 (2015). The standard for assessing a pretrial detainee's excessive force claim is "solely an objective one." Id. In determining whether the force was objectively unreasonable, a court considers the evidence "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. (citing Graham, 490 U.S. at 396). Considerations that bear on the reasonableness or unreasonableness of the force include: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force;

the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. Id.

The Fourth Circuit recognizes a cause of action for bystander liability "premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416-17 (4th Cir. 2014) (quoting Randall v. Prince George's Cnty., 302 F.3d 188, 203 (4th Cir. 2002)). A "bystander officer" can be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall, 302 F.3d at 204.

Plaintiff claims that Defendants Thicklin and Langford removed him from a chair without a verbal command and exerted some force when Plaintiff attempted to pull away from him to protest the nurse's actions. Standing alone, these allegations fail to show use of force that is objectively unreasonable. However, Plaintiff's further allegations that the amount of force with which he was thrown to the ground was so great that he struck his head and lost consciousness, and that he awoke to find Defendant Langford striking his face, are sufficient to show objective unreasonableness. See, e.g., Meyers v. Baltimore County, Md., 713 F.3d 723 (4th Cir. 2013) (denying

defendant qualified immunity on a Fourth Amendment excessive force claim because it was objectively unreasonable for an officer to continue using a taser on the subject after the subject was no longer armed, had been brought to the ground, had been physically restrained by other officers, and was no longer actively resisting arrest).

Plaintiff's allegations that Defendant Thicklin was holding Plaintiff's ankle while Langford was striking Plaintiff's face and made no attempt to intervene sufficiently state a claim of bystander liability as to Thicklin. However, Plaintiff's claims against John Doe Officers 1 and 2 are insufficient. Plaintiff alleges that other officers witnessed the incident but made no attempt to intervene, however, Plaintiff has not adequately alleged that John Doe Officers 1 and 2 had a reasonable opportunity to prevent harm.

Therefore, Plaintiff's claims of excessive force will proceed against Defendants Langford and Thicklin and his claim for failure to intervene will proceed against Defendant Thicklin. The claims for failure to intervene against John Doe Officers 1 and 2 will be dismissed for failure to state a claim.

### D. Deliberate Indifference

Prisoners have the right to receive adequate medical care while incarcerated.[4] See Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Scinto v. Stansberry, 841 F.3d 219, 236 (4th Cir. 2016). This constitutional right is violated when a prison official demonstrates "deliberate indifference" to an inmate's serious medical or psychological needs. Id.; Buffington v. Baltimore Cnty., Md., 913 F.2d 113, 120 (4th Cir. 1990) ("A serious psychological impairment can qualify as [a serious] medical need."). To state a § 1983 claim for deliberate indifference to a

---

[4] Because Plaintiff was a pre-trial detainee at the relevant times, his medical claim is properly brought under the Fourteenth Amendment rather than the Eighth Amendment, which applies to convicted prisoners. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983); see also Martin v. Gentile, 849 F.2d 863 (4th Cir. 1988) (applying the Fourteenth Amendment to an arrestee's deliberate indifference claim). The Fourth Circuit has long applied the Eighth Amendment deliberate indifference standard to pretrial detainees' claims for the denial of medical care. See, e.g., Young v. City of Mount Ranier, 238 F.3d 567, 575 (4th Cir. 2001); Grayson v. Peed, 195 F.3d 692, 695 (4th Cir.1999); Belcher v. Oliver, 898 F.2d 32, 34 (4th Cir.1990); Martin, 849 F.3d at 863. Some circuits have held, in light of Kingsley, that an objective reasonableness standard should apply in custodial contexts beyond excessive force, including medical claims. See, e.g., Hardeman v. Curran, 933 F.3d 816 (7th Cir. 2019) (extending the objective standard to conditions of confinement cases); Darnell v. Pineiro, 849 F.3d 17, 35 (2d Cir. 2017) (extending objective standard to conditions of confinement cases); Castro v. City of Los Angeles, 833 F.3d 1060, 1069-70 (9th Cir. 2016 (en banc) (extending the objective standard to failure to protect claims). The Fourth Circuit has not yet addressed this question. See, e.g., Duff v. Potter, 665 F. App'x 242, 244-45 (4th Cir. 2016) (applying the Kingsley standard to a detainee's excessive force claim but declining to disturb the district court's ruling on plaintiff's claim of deliberate indifference to a serious medical need for procedural reasons). The Court will apply the deliberate indifference standard in this case, as the relevant Fourth Circuit case law has not been overruled and the Fourth Circuit has not expressed any intention to do so. See, e.g., Shover v. Chestnut, 798 F. App'x 760, 761–62 (4th Cir. 2020) (applying the deliberate indifference standard to a pretrial detainee's medical claim without discussing Kingsley).

Case 1:19-cv-00158-MR   Document 20   Filed 05/27/20   Page 11 of 32

serious medical need, a prisoner must show that he has a serious medical need and that officials knowingly disregarded that need and the substantial risk it posed. DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018); see Farmer v. Brennan, 511 U.S. 825, 832 (1994).

A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks omitted). An official acts with deliberate indifference if he had actual knowledge of the prisoner's serious medical needs and the related risks but nevertheless disregards them. DePaola, 884 F.3d at 846. The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Mere negligence or malpractice does not violate the Eighth Amendment. Miltier v. Beorn, 896 F.2d 848, 852 (4th Cir. 1990), *overruled on other grounds by* Farmer, 511 U.S. at 825.

Plaintiff alleges that Nurse Jane Doe threatened to withhold medication unless he signed a release form and, even after he signed, she failed to provide medication and monitoring for his Xanax withdrawal, which he alleges can be fatal. Plaintiff has sufficiently stated a deliberate indifference

claim by alleging that Nurse Jane Doe knew about his use of Xanax and heroin, that she purposefully withheld medication and monitoring, and that she did so even though Xanax withdrawal is potentially fatal. The deliberate indifference claim against Nurse Jane Doe will therefore be permitted to proceed. See, e.g., Gonzalez v. Cecil Cnty., Md., 221 F.Supp.2d 611 (D.Md. 2002) (denying nurses' motion to dismiss where plaintiff had told them he was a heroin addict and was likely to experience acute withdrawal symptoms and they provided woefully inadequate treatment).

Next, Plaintiff alleges that Langford, Thicklin, and John Doe Officers 1 and 2 saw his head strike the floor, rendering him unconscious, during the December 23, 2018 incident. Plaintiff further alleges that he was denied medical attention, and that the officers lied in a police report, stating that Plaintiff declined medical treatment. Loss of consciousness from head trauma is a condition so obvious that a layman would know that some medical attention is required. Plaintiff's allegation that the officers lied in the police report about Plaintiff's waiver of care adequately alleges that the deprivation of medical attention was purposeful. This claim is sufficient to proceed against Defendants Langford, Thicklin, and John Doe Officers 1 and 2. See Avila v. United States, 2019 WL 7500790 (S.D.W. Va. Nov. 4, 2019) (assuming that head trauma causing severe headaches, dizziness, blurred

13

vision, and memory loss is sufficiently serious to give rise to a deliberate indifference claim); <u>Johnson v. Proctor</u>, 2016 WL 165020 (N.D.W. Va. Jan. 14, 2016) (allegations that an inmate suffered lacerations to his forehead and head pain following head trauma was objectively serious).

Plaintiff further alleges that he begged for medical attention for severe withdrawal symptoms for seven or eight days. This vague and conclusory claim is insufficient to proceed. Plaintiff has minimally alleged that several correctional officers had actual knowledge of Plaintiff's serious medical need because Plaintiff informed them of his severe withdrawal symptoms. Plaintiff does not, however, sufficiently allege that these individuals knew that the lack of treatment for withdrawal symptoms exposed Plaintiff to a serious risk of harm or that they deliberately chose to withhold needed medical care. <u>See</u>, <u>e.g.</u>, <u>Thornhill v. Aylor</u>, 2016 WL 8737358 (W.D. Va. Feb. 19, 2016) (non-medical staff's knowledge that inmate was going through withdrawal and had vomited insufficient to show awareness of substantial risk of harm).

Finally, Plaintiff claims that he reported a possible seizure to John Doe Officer 3 after he woke up on the floor with a bloody tongue, but that he was deprived medical attention with deliberate indifference to his serious medical needs. This claim is minimally adequate to proceed. Loss of consciousness and a bloody tongue due to a possible seizure is a sufficiently serious

14

condition that a layman would have recognized requires medical care. See Heyer, 849 F.3d at 210 ("we have little difficulty concluding that seizures are sufficiently serious to require medical treatment."). Liberally construed, Plaintiff's allegation that the care was deliberately denied states a claim for purposeful deprivation of care. See Scinto, 841 F.3d at 232 (outward signs of inmate's need for medical attention and defendants' contemporaneous failure to offer aid raised an inference of deliberate indifference that was sufficient to survive summary judgment). Therefore, this claim is sufficient to proceed against John Doe Officer 3.

### E.    Retaliation

The First Amendment right to free speech "includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for exercising that right." Suarez Corp. v. McGraw, 202 F.3d 676 (4th Cir. 2000). Prison officials may not retaliate against an inmate for exercising a constitutional right. See Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir.1978). In order to state a colorable retaliation claim under § 1983, a plaintiff must allege: "(1) []he engaged in protected First Amendment activity, (2) the defendant[] took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendant['s] conduct." Martin v. Duffy, 858

F.3d 239, 249 (4th Cir. 2017) (quoting <u>Constantine v. Rectors & Visitors of George Mason Univ.</u>, 411 F.3d 474, 499 (4th Cir. 2005)).

It appears that Plaintiff is attempting to state a retaliation claim against Nurse Jane Doe. Plaintiff has successfully alleged that he used his First Amendment right to disagree with the requirement that he sign a rights waiver form and that he threatened to sue. Nurse Jane Doe withheld medication and monitoring for Plaintiff's withdrawal because of Plaintiff's statements. Plaintiff has stated causation by alleging that Nurse Jane Doe threatened to withhold medication and treatment if he would not sign the release form and that she actually did withhold medication and treatment after he signed the form. <u>See</u> <u>Dillon v. Murray</u>, 853 F.Supp. 199 (W.D. Va. May 4, 1994) (denying summary judgment where defendant's verbal threats suggested that defendant's actions may have been improperly motivated by plaintiff's threatened lawsuit). Plaintiff's retaliation claim against Nurse Jane Doe will therefore be permitted to proceed.

### F. Official Capacity Claims

An official capacity claim against a state official is "treated as a suit against the entity," which must then be a "'moving force' behind the deprivation." <u>King v. Rubenstein</u>, 825 F.3d 206, 223 (4th Cir. 2016) (quoting <u>Polk County v. Dodson</u>, 454 U.S. 312, 326 (1981)). Thus, the entity's "'policy

or custom' must have played a part in the violation of federal law," id. (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978)).

Plaintiff asserts that the Sheriff's policy that requires medical personnel to obtain signatures on a form releasing Buncombe County from liability for medical costs resulting from self-injurious behavior harms the constitutional rights "of the persons entering the Buncombe County Detention Facility." [Doc. 16-1 at 9].

It appears that the Plaintiff is attempting to raise the rights of individuals other than himself. As a general matter, the Fourth Circuit has "considered – and rejected – the right of individuals to litigate *pro se* on behalf of others." Wojcicki v. SCANA/SCE&G, 947 F.3d 240, 244 (4th Cir. 2020) (holding that a *pro se* litigant cannot bring an FCA *qui tam* action); see generally Myers v. Loudoun Cnty. Pub. Sch., 418 F.3d 395, 401 (4th Cir. 2005) (holding that "non-attorney parents generally may not litigate the claims of their minor children in federal court."); Hummer v. Dalton, 657 F.2d 621, 635-26 (4th Cir. 1981) (a prisoner cannot act as a "knight-errant" for others); Oxendine v. Williams, 509 F.2d 1405 (4th Cir. 1975) ("it is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action."). This bar (1) "protects the rights of those before the court" and (2) "jealously guards the judiciary's authority to govern those

who practice in its courtrooms." Myers, 418 F.3d at 400. Here, Plaintiff is proceeding *pro se*. Therefore, to the extent he seeks relief on behalf of other detainees at the BCDF, this claim is dismissed.

Plaintiff's allegations with regards to BCDF's release form policy fail to state a claim. Plaintiff alleges the existence of a policy requiring medical release forms waiving BCDF's liability to pay for self-injurious acts but he has failed to explain how this policy violated any of his constitutional rights. Therefore, Plaintiff's official capacity claims with regards to BCDF release policy will be dismissed for failure to state a claim.

### G.    Disciplinary Proceedings

Pretrial detainees "retain a liberty interest in freedom from 'punishment'' so that "discrete 'punitive measures' imposed during pretrial detention intrude on a protected liberty interest." Dilworth v. Adams, 841 F.3d 246, 255 (4th Cir. 2016) (quoting Bell v. Wolfish, 441 U.S. 520, 353-37 (1979)). This principle extends to disciplinary measures stemming from a pretrial detainee's misconduct while in custody. See Dilworth, 841 F.3d at 253. Thus, a pretrial detainee may not be disciplined in the absence of some level of due process. Bell, 441 U.S. at 535; Dilworth, 841 F.3d at 251-52.

The rights accorded to convicted prisoner provide a "floor" for detainees' rights. Williamson v. Stirling, 912 F.3d 154, 183 (4th Cir. 2018). A

disciplinary procedure must include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. See Wolff v. McDonnell, 418 U.S. 539, 564-71, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). There is no constitutional right to confront and cross-examine witnesses or to retain and be appointed counsel in a prison disciplinary proceeding. See Baxter v. Palmigiano, 425 U.S. 308, 322, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); Brown v. Braxton, 373 F.3d 501, 505-06 (4th Cir. 2004). "[P]rison video surveillance evidence constitutes documentary evidence subject to the procedural due process protections recognized in Wolff." Lennear v. Wilson, 937 F.3d 257, 262 (4th Cir. 2019) (habeas corpus case). This right includes at least two dimensions: "(A) the qualified right of access to such evidence and (B) the qualified right to compel official review of such evidence." Id. Allowing an inmate to access video surveillance evidence, so long as such access does not infringe on legitimate penological interests, "constitutes an essential

aspect of the inmate's due process right to 'marshal the facts in his defense and present witnesses and documentary evidence at the hearing.'" <u>Id.</u> (quoting <u>Gibbons v. Higgins</u>, 73 F.3d 364, 364 (7th Cir. 1995) (table)).

Plaintiff claims that he was placed in administrative segregation and charged with administrative rule violations. Although he was appointed an attorney in his criminal case, he was not advised of his right to have counsel present at the disciplinary hearing. He further claims that, "under the threat of lengthy disciplinary sanctions being imposed for denying the allegations [he] accepted responsibility for the officers [sic] injury and therefore was coerced and did not get the opportunity to view the motion picture evidence…." [Doc. 16-1 at 8].

Plaintiff's allegation that he was deprived of his right to counsel at the disciplinary proceeding fails because there is no right to have counsel present at a disciplinary proceeding. <u>See</u> <u>Baxter</u>, 425 U.S. at 322; <u>Brown</u>, 373 F.3d at 505-06.

Nor was Plaintiff's acceptance of responsibility coerced simply because he did so in order to avoid facing a potentially more severe punishment. <u>See</u> <u>generally</u> <u>Brady v. United States</u>, 397 U.S. 742, 751, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) ("We decline to hold … that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by

the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged."); North Carolina v. Alford, 400 U.S. 25, 31, 37-38, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (same); United States v. McDaniel, 182 F. App'x 176 (4th Cir. 2006) (defendant's guilty plea was not involuntary because he felt pressured into the plea "merely because it was influenced by his desire to avoid a higher sentence.").

Plaintiff further alleges that he did not have the opportunity to view the videotape of the incident. This allegation is insufficient insofar as Plaintiff fails to identify the person(s) who allegedly refused him the opportunity to view the videotape of the incident. See Iqbal, 556 U.S. at 678 ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (citing Twombly, 550 U.S. at 544). Moreover, Plaintiff alleges that his inability to view the video resulted from his acceptance of responsibility and it thus appears that Plaintiff may have waived his due process rights with regards to the videotape. See generally Kendall v. Balcerzak, 650 F.3d 515, 530 (4th Cir. 2011) (quoting Elsmere Park Club, L.P. v. Town of Elsmere, 542 F.3d 412, 423 (3d Cir. 2008)) ("a procedural

due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies.").

Therefore, Plaintiff's claims that he was denied due process in his disciplinary proceeding will be dismissed.

### H.   Malicious Prosecution

A malicious prosecution claim brought under § 1983 "is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." Evans v. Chalmers, 703 F.3d 636, 646 (4th Cir. 2012) (quoting Lambert v. Williams, 223 F.3d 257, 261 (4th Cir. 2000)); see Manuel v. City of Joliet, Ill., __ U.S. __, 137 S. Ct. 911, 919, 197 L.Ed.2d 312 (2017) ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment."). To prove such a claim, a plaintiff must show "that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Hupp v. Cook, 931 F.3d 307, 323–24 (4th Cir. 2019) (quoting Evans, 703 F.3d at 647).

To make out a malicious prosecution claim under North Carolina law, a plaintiff must show that a defendant "(1) instituted, procured or participated

in the criminal proceeding against [the] plaintiff; (2) without probable cause; (3) with malice; and (4) the prior proceeding terminated in favor of [the] plaintiff." Moore v. Evans, 124 N.C. App. 35, 43, 476 S.E.2d 415, 421 (1996) (alterations in original) (quoting Williams v. Kuppenheimer Mfg. Co., Inc., 105 N.C.App. 198, 412 S.E.2d 897, 899 (1992)).

Plaintiff claims that he was "charged with felony assault on a government employee," [Doc. 16-1 at 10], and was "maliciously prosecuted … for a crime [he] didn't commit," [Doc. 16-1 at 8]. Plaintiff has failed to state a malicious prosecution claim under either the Fourth Amendment or North Carolina law because he does not allege that the criminal proceeding terminated in his favor. He has thus failed to set forth the elements for a malicious prosecution under either standard and this claim will be dismissed.

## I.     Access to Courts

The constitution guarantees the right to "adequate, effective, and meaningful" access to the courts. Bounds v. Smith, 430 U.S. 817, 822 (1977), abrogated in part by Lewis v. Casey, 518 U.S. 343 (1996).  Access to courts cases rest on the recognition that "the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." Christopher v. Harbury, 536 U.S. 403, 415 (2002). A plaintiff must identify actual injury resulting from the conduct, that is, that a

nonfrivolous post-conviction or civil rights legal claim has been frustrated or impeded. See Casey, 518 U.S. at 353. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Casey, 518 U.S. at 355.

Plaintiff presents "backward-looking" claims that he was denied access to the courts. See Harbury, 536 U.S. at 415 n. 12 (assuming, without deciding, that such a claim is correct). A backward-looking access claim is established "where a party engaged in pre-filing actions which effectively cover up evidence and actually render any state court remedies ineffective." Pollard v. Pollard, 325 F. App'x 270 (4th Cir. 2009). To maintain a backward-looking claim, "a plaintiff must identify (1) a nonfrivolous underlying claim; (2) an official act that frustrated the litigation of that claim; and (3) a remedy that is not otherwise available in another suit that may yet be brought." Waller v. Hanlon, 922 F.3d 590, 602 (5th Cir. 2019) (quoting United States v. McRae, 702 F.3d 806, 830-31 (5th Cir. 2012)); see Pollard, 325 F. App'x at 270 (to prevail on a backward-looking claim, the plaintiff must demonstrate that "the defendants' actions foreclosed her from filing suit in state court or rendered ineffective any state court remedy she previously may have had.") (citing Swekel v. City of River Rouge, 119 F.3d 1259, 1263-64 (6th Cir. 1997)).

Plaintiff argues that BCDF intentionally destroyed video footage of the December 23, 2018 incident despite knowing that Plaintiff would be filing a lawsuit and that he was being criminally charged. Plaintiff claims that he was "maliciously prosecuted for a crime [he] didn't commit" in his state criminal case. [Doc. 16-1 at 8].

First, Plaintiff's claim that he was denied access to the courts with regards to his state criminal prosecution is barred under Heck v. Humphrey, 512 U.S. 477 (1994). A state prisoner's § 1983 claim for damages is not cognizable if judgment in the prisoner's favor "'would necessarily imply the invalidity of his conviction or sentence,'" until such time as he demonstrates that his conviction or sentence has been invalidated. Young v. Nickols, 413 F.3d 416, 419 (4th Cir. 2005) (quoting Heck, 512 U.S. at 487); see Wilson v. Johnson, 535 F.3d 262 (4th Cir. 2008). For Heck to bar a § 1983 claim: (1) a judgment in favor of the plaintiff must necessarily imply the invalidity of a plaintiff's conviction or sentence; and (2) the claim must be brought by a claimant who is either (i) currently in custody or (ii) no longer in custody because the sentence has been served, but nevertheless could have practicably sought habeas relief while in custody. Griffin v. Baltimore Police Dep't, 804 F.3d 692, 296 (4th Cir. 2015) (citing Covey v. Assessor of Ohio Cty., 777 F.3d 186, 197 (4th Cir. 2015)).

Plaintiff's allegation that the destruction of the videotape caused him to be convicted of an offense of which he is actually innocent is in the nature of a Brady[5] claim. Plaintiff's success on this claim would necessarily call the validity of his conviction into question. See, e.g., Griffin v. Baltimore Police Dep't, 804 F.3d 692 (4th Cir. 2015) (claim for damages against police and prosecution for withholding evidence in violation of Brady during a murder trial was barred by Heck). Therefore, Plaintiff's access to courts claim is barred by Heck until such time as Plaintiff can demonstrate that the conviction was overturned.

Plaintiff also appears to allege that destruction of the videotape denied him access to the courts with regards to his § 1983 claims. Plaintiff has stated nonfrivolous § 1983 claims insofar as his excessive force/failure to intervene, retaliation, and deliberate indifference claims have passed initial review. However, his related access to courts claim is premature because he has not shown that a remedy is not otherwise available. Plaintiff has the opportunity to litigate these claims in the instant suit and, if this remedy is insufficient, he can raise his access to courts claim in a future action. See Pollard, 325 F. App'x at 270.

---

[5] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

26

For all these reasons, Plaintiff's access to courts claims will be dismissed.

### J. Pending Motions

Plaintiff has filed a Motion for Default Judgment on his claims of excessive force because Defendants have failed to file an Answer. [Doc. 17].

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "Rule [55(b)] of the Federal Rules of Civil Procedure authorizes the entry of a default judgment when a defendant fails 'to plead or otherwise defend' in accordance with the Rules." United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982). The clear policy of the Rules is to encourage dispositions of claims on their merits. Id.

The Clerk has not entered a default in this case because Defendants have not yet been served and, as such, their answers are not yet due. Therefore, the entry of default judgment is inappropriate and Plaintiff's Motion will be denied.

Second, Plaintiff has filed a Motion to Consolidate in which he asks the Court to consolidate this action with two other pending § 1983 cases, Civil

Case Nos. 1:19-cv-76 and 1:19-cv-303. Plaintiff also requests that counsel be appointed due to the complexity of his claims.

Rule 42 permits consolidation of actions if the actions "involve a common question of law or fact." Fed. R. Civ. P. 42(a)(2). Proper application of Rule 42(a) requires the district court to determine "whether the specific risks of prejudice and possible confusion" from consolidation "[are] overborne by the risk of inconsistent adjudications…, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives." Campbell v. Boston Sci. Corp., 882 F.3d 70, 74 (4th Cir. 2018) (quoting Arnold v. E. Air Lines, Inc., 681 F.2d 186, 193 (4th Cir. 1982), *rev'd on other grounds*, 712 F.2d 899 (4th Cir. 1983)). District courts enjoy "substantial discretion in deciding whether and to what extent to consolidate cases." Hall v. Hall, 138 S. Ct. 1118, 1131, 200 L. Ed. 2d 399 (2018).

In Civil Case Nos. 1:19-cv-76 and 1:19-cv-303, Plaintiff asserts claims of deliberate indifference to a serious psychological need and failure to protect Plaintiff from his November 11, 2016 suicide attempt at BCDF. The Amended Complaint passed initial review in Civil Case No. 1:19-cv-76 against Defendants Deputy John Doe, Jane Doe Mental Healthcare

28

Provider, Deputy Hayes, Deputy Watkins, and Buncombe County. Civil Case No. 1:19-cv-303 addresses the same November 11, 2016 incident as the earlier-filed 1:19-cv-76 case and has been dismissed as duplicative. Therefore, the Motion seeking consolidation is moot with regards to Civil Case No. 1:19-cv-303.

The instant case asserts claims surrounding a use of force and the denial of medical care for withdrawal, seizures, and loss of consciousness at the BCDF on December 23, 2018. The Second Amended Complaint has passed initial review on claims of excessive force, deliberate indifference to a serious medical need, and retaliation.

Civil Case No. 1:19-cv-76 and the instant case have a common question of law insofar as both deal with deliberate indifference to a serious medical or psychological need. However, these incidents do not share common questions of fact. They occurred more than two years apart and involve different Defendants. The Court cannot determine at this early stage whether the benefits and possibility of prejudice favor of consolidation. Therefore, the Motion to Consolidate will be denied without prejudice. See, e.g., Dellinger v. Clarke, 172 F.Supp.3d 898 (W.D.Va. March 22, 2016) (denying consolidation until the record is more fully developed).

Plaintiff also requests the appointment of counsel. There is no absolute right to the appointment of counsel in civil actions such as this one. Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). However, a court may request that an attorney represent an indigent plaintiff proceeding *in forma pauperis*. 28 U.S.C. § 1915(e)(1). A plaintiff must present "exceptional circumstances" in order to require the Court to seek the assistance of a private attorney for a plaintiff who is unable to afford counsel. Miller, 814 F.2d at 966. Plaintiff has failed to demonstrate the existence of exceptional circumstances that would warrant the appointment of counsel as the issues are not extremely complex and he has ably represented himself in these proceedings. See McMillian v. Wake Cnty. Sheriff's Dep't, 399 F. Appx. 824 (4th Cir. 2010) (district court did not abuse its discretion in denying plaintiff's request for the appointment of counsel where the record reflected that plaintiff ably pursued his claim in the district court).

## V.     CONCLUSION

For the reasons stated herein, the Superseding Amended Complaint has passed initial review with respect to Plaintiff's excessive force/failure to intervene claim against Defendants Langford and Thicklin; Plaintiff's deliberate indifference claims against Nurse Jane Doe, Defendant Langford, Defendant Thicklin, and John Doe Officers 1, 2, and 3; and Plaintiff's

retaliation claim against Nurse Jane Doe. The remaining claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

## O R D E R

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Leave to Amend [Doc. 16] is **GRANTED**. The Clerk is instructed to docket the proposed Superseding Amended Complaint [Doc. 16-1] as the Second Amended Complaint.

2. The Second Amended Complaint has passed initial review with respect to Plaintiff's excessive force/failure to intervene claim is against Defendants Langford and Thicklin; Plaintiff's deliberate indifference claims against Nurse Jane Doe, Defendant Langford, Defendant Thicklin, and John Doe Officers 1, 2, and 3; and Plaintiff's retaliation claim against Nurse Jane Doe.

3. The remaining claims are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

4. Plaintiff's Motion for Default Judgment [Doc. 17] is **DENIED**.

5. Plaintiff's Motion to Consolidate [Doc. 18] is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk is directed to mail a summons form to Plaintiff for Plaintiff to fill out and return for service of process on **Defendants Willis Colby Langford, Chauncey Tavares**

**Thicklin, John Doe Officers 1 through 3,** and **Nurse Jane Doe.** Once the Court receives the completed summons forms, the Clerk shall then direct the U.S. Marshal to effectuate service on Defendants. The Clerk is respectfully instructed to note on the docket when the forms have been mailed to Plaintiff.

**IT IS SO ORDERED.**

Signed: May 27, 2020

Martin Reidinger
United States District Judge