# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:19-cv-00158-MR

| | |
|---|---|
| CHRISTOPHER ANTHONY JUDD, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> WILLIS COLBY LANGFORD, et al., ) <br> ) <br> Defendants. ) <br> _____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment [Doc. 36].

## I. BACKGROUND

The Plaintiff Christopher Anthony Judd, proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred at the Buncombe County Detention Facility ("BCDF").[1] The Defendants are Willis Colby Langford and Chauncey Tavares Thicklin, who are detention officers at BCDF. The Plaintiff's claims passed initial review against Defendants Langford and Thicklin for the use of excessive force/

---

[1] The Plaintiff filed the Complaint while he was incarcerated at BCDF but he was subsequently released from custody.

failure to intervene and for deliberate indifference to a serious medical need. [Doc. 21: Second Am. Compl.; Doc. 20: Order on Initial Review]. The Plaintiff seeks injunctive relief and compensatory and punitive damages. [Doc. 21: Second Am. Compl. at 7].

Defendants Langford and Thicklin have now filed a Motion for Summary Judgment. [Doc. 36: Motion for Summary Judgment]. The Court notified the Plaintiff of the opportunity to respond to Defendants' Motions and to present evidence in opposition pursuant to Fed. R. Civ. P. 56. [Doc. 38: Roseboro[2] Order]. The Plaintiff did not timely respond or move for an extension of time. [See Doc. 40: Order Denying an Extension of Time]. Having been fully briefed, this matter is ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

---

[2] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

(1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt. Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 174, 180 (4th Cir. 2000). The nonmoving party must present sufficient evidence

from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

A plaintiff's failure to respond to a motion for summary judgment renders those facts established by the moving party uncontroverted. See Fed. R. Civ. P. 56(e)(3). Nevertheless, "the moving party must still show that the uncontroverted facts entitle the party to a judgment as a matter of law." Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993)

### III. FACTUAL BACKGROUND

The Defendants' forecast of evidence, which is undisputed by the Plaintiff, establishes the following facts.

The Plaintiff was booked at BCDF on December 22, 2018 at 8:49 p.m. [Doc. 36-2: Gould Decl. Ex. A at 5, Ex. H at 32]. Following a medical

screening on December 23, 2018, Betty Garth, LPN,[3] told the Plaintiff to exit the intake office, and she requested that correctional officers escort the Plaintiff back to his cell. [Doc. 36-2: Gould Decl. Ex C at 18].

Defendants Langford and Thicklin escorted the Plaintiff out of the intake office and towards a cell while the Plaintiff was unhandcuffed, unshackled, and walking under his own power. [Doc. 36-3: Langford Decl. at ¶ 5; Doc. 36-4: Thicklin Decl. at ¶ 5]. As they approached the Plaintiff's cell the Plaintiff, without warning, planted his feet and swung his elbows towards Defendants Langford and Thicklin. [Doc. 36-3: Langford Decl. at ¶ 6; Doc. 36-4: Thicklin Decl. at ¶ 6]. Defendants Langford and Thicklin took the Plaintiff to the ground and began placing him in the prone position with his hands behind his back. [Doc. 36-3: Langford Decl. at ¶ 7; Doc. 36-4: Thicklin Decl. at ¶ 7]. When they went to the ground, the Plaintiff immediately tucked his arms underneath his body and his wrists at his upper chest. [Doc. 36-3: Langford Decl. at ¶ 8; Doc. 36-4: Thicklin Decl. at ¶ 8]. Kristi Michelle Jones,[4] a detention officer, heard a commotion and walked into the hallway

---

[3] The Plaintiff submitted a proposed summons for "Betty Garth LPN," however, Nurse Garth was never named as a Defendant or served. [See Doc. 33: Proposed Summons at 1].

[4] The Plaintiff submitted a proposed summons for "Detention Officer Kristi Michelle Jones"; however, Officer Jones was never named as a Defendant or served. [See Doc. 33: Proposed Summons at 3].

to find the Plaintiff on the ground, struggling with Defendants Langford and Thicklin. [Doc. 36-2: Gould Decl. Ex. D at 20]. As Defendant Langford grabbed one of the Plaintiff's wrists, the Plaintiff bit Langford's left wrist, breaking the skin and causing a puncture wound approximately one-half inch in length that required treatment at a hospital. [Doc. 36-3: Langford Decl. at ¶¶ 11, 21 and Ex. C at 8; Doc. 36-4: Thicklin Decl. at ¶ 9]. The Plaintiff was ultimately secured and indicated that he would cooperate. [Doc. 36-3: Langford Decl. at ¶¶ 12-13; Doc. 36-4: Thicklin Decl. at ¶ 10; Doc. 36-2: Gould Decl. Ex. D at 20]. Defendants Langford and Thicklin helped the Plaintiff to stand, and the Plaintiff walked into his cell. [Doc. 36-3: Langford Decl. at ¶¶ 14-15; Doc. 36-4: Thicklin Decl. at ¶¶ 11-12; Doc. 36-2: Gould Decl. Ex. D at 20]. The Plaintiff's handcuffs were removed, and Defendants Langford and Thicklin exited the cell without further incident. [Doc. 36-3: Langford Decl. at ¶ 15; Doc. 36-4: Thicklin Decl. at ¶ 12].

The entire incident lasted less than five minutes, and the Plaintiff remained conscious throughout. [Doc. 36-3: Langford Decl. at ¶¶ 16, 17]; [Doc. 36-4: Thicklin Decl. at ¶¶ 13, 14]. During this incident, only soft hands were used; the officers did not use any kicks, punches, other strikes, or weapons. [Doc. 36-3: Langford Decl. at ¶ 18; Doc. 36-4: Thicklin Decl. at ¶ 15]. The Plaintiff had no apparent injuries as a result of the incident. [Doc.

36-3: Langford Decl. at ¶ 19; Doc. 36-4: Thicklin Decl. at ¶ 16]. The Plaintiff was nevertheless provided the opportunity to be evaluated by a medical professional after the encounter, which he refused. [Doc. 36-3: Langford Decl. at ¶ 20; Doc. 36-4: Thicklin Decl. at ¶ 17].

The Defendants filed a video of the incident which reveals:

| | |
|---|---|
| 0:00:05 | Plaintiff walks down a hallway between two male officers |
| 0:00:12 | Plaintiff suddenly stops, plants his feet, and violently jerks his elbows into the officers |
| 0:00:13 | The officers take the Plaintiff to the ground |
| 0:00:21 | The Plaintiff continues to struggle and the officers flip him onto his stomach |
| 0:00:37 | A female officer appears in the hallway |
| 0:0:43 | The female officer stands by while the Plaintiff continues to struggle with the officers on the ground, and reaches down to assist |
| 0:00:56 | The officers work to secure the Plaintiff |
| 0:01:14 | The Plaintiff renews his struggles |
| 0:01:29 | The video ends while the Plaintiff and two male officers are still on the ground |

[Doc. 37: Notice of Conventionally Filed DVD].

On December 24, 2018, the Plaintiff was criminally charged with felony assault for inflicting physical injury on a detention employee, i.e., the bite to Defendant Langford's arm. The Plaintiff pled guilty to this charge on August

8, 2019. [Doc. 36-2: Gould Decl. Ex. E at 21-22; Doc. 36-2: Gould Decl. Ex. H at 33]. The Plaintiff was charged with disciplinary infractions for: (1) assault on staff; (2) abusive/disrespectful to staff; (3) threat to safety/security of facility; and (4) staff injury/ assaultive. [Doc. 36-2: Gould Decl. Ex. F at 23]. The Plaintiff admitted he was "probably guilty" of infractions (2) and (3) but he pleaded not guilty to infractions (1) and (4). [Id. at 23-24]. He was found guilty of all four infractions at a disciplinary hearing on January 2, 2019. [Id.].

The Plaintiff was evaluated by Nurse Charlene Parker on December 25, 2018 at 2:43 p.m. [Doc. 36-2: Gould Decl. Ex. G at 27]. At that time, the Plaintiff denied having suffered any trauma within the past 24-48 hours. [Id.]. Nurse Parker noted that there were two abrasions on the Plaintiff's left temple and a crack on the left corner of the Plaintiff's lip, but that no lacerations were present. [Id. at 29-30].

The Plaintiff filed a grievance on January 9, 2019, complaining that, when he "attempted to resist" going back to his cell, the officers who were escorting him "slammed [him] on [his] back causing [him] to hit [his] head very hard on the cement floor and afterwards [he] believe[s] [he] was punched in the face two or more times causing injury to [his] upper/left lip and left cheekbone." [Doc. 36-2: Gould Decl. Ex. J at 34]. The Plaintiff's

grievance was denied on the grounds that the Plaintiff had admitted at the disciplinary hearing that he resisted officers, and that the use of force was investigated and found to be within BCSO guidelines. [Id. at 35] (grievance response). The Plaintiff did not appeal this response and filed no other grievances related to the matter. [Doc. 36-2: Gould Decl. at ¶ 16].

## IV. DISCUSSION

### A. Exhaustion

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust his administrative remedies before filing a § 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. PLRA's exhaustion requirement applies to all inmate suits about prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002). There is "no question that exhaustion is mandatory under PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524). The PLRA requires "proper" exhaustion, which means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford

9

v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). The exhaustion of administrative remedies must occur before a civil action is commenced. Porter, 534 U.S. at 516. A prisoner may not exhaust her administrative remedies during the pendency of a § 1983 action. Germain v. Shearin, 653 F. App'x 231, 234 (4th Cir. 2016); French v. Warden, 442 F. App'x 845, 846 (4th Cir. 2011).

Here, the Plaintiff alleges in his Second Amended Complaint that he filed numerous grievances about "coercion, excessive force, medical treatment withheld, [and] interfering with right of access to courts," and that his claims were dismissed and denied. [Doc. 21: Second Am. Coml. at 12]. He further alleges that he "began requesting inmate grievance forms on December 24, 2018 and was repeatedly refused and told that the issues were not grievable offenses." [Id. at 13]. He also alleges that he was not permitted to file a grievance until February 2019. [Doc. 21 at 13: Second Am. Compl. at 13].

In response to those allegations, the Defendants have presented a forecast of evidence—which is uncontroverted—that the Plaintiff filed no grievance related to any alleged deliberate indifference to a serious medical need for having been rendered unconscious during the use of force incident, and that he failed to appeal a grievance directed to the alleged use of

10
Case 1:19-cv-00158-MR   Document 42   Filed 08/11/21   Page 10 of 17

excessive force. Further, any suggestion that the grievance procedure was not available to him after the use of force incident is conclusively refuted by the fact that he filed a grievance on January 9, 2019. And, with respect to this one grievance the Plaintiff filed, the Defendants have forecast evidence that the Plaintiff did not avail himself of the available administrative remedy procedure in order to exhaust that grievance. For all these reasons, the Court concludes that the Plaintiff has failed to exhaust his claims for the use of excessive force/failure to intervene and for deliberate indifference to a serious medical need, and such claims are subject to dismissal without prejudice.

## B. Excessive Force

The Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). To state an excessive force claim, a pretrial detainee must show only that the force "purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 576 U.S. 389 (2015). The standard for assessing a pretrial detainee's excessive force claim is "solely an objective one." Id. In determining whether the force was objectively unreasonable, a court considers the evidence "from the perspective of a reasonable officer on the scene, including what the officer

knew at the time, not with the 20/20 vision of hindsight." Id. (citing Graham, 490 U.S. at 396). Considerations that bear on the reasonableness or unreasonableness of the force include: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. Id.

The Fourth Circuit recognizes a cause of action for bystander liability "premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416-17 (4th Cir. 2014) (quoting Randall v. Prince George's Cty., 302 F.3d 188, 203 (4th Cir. 2002)). A "bystander officer" can be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall, 302 F.3d at 204.

The Plaintiff alleges in his Second Amended Complaint that Defendants Langford and Thicklin used excessive force when he slammed the Plaintiff into the floor, rendering him unconscious; that Defendant Langford struck his face several times, causing lacerations; and that
12

Defendant Thicklin failed to intervene in Langford's use of excessive force. [Doc. 21: Second Am. Compl. at 10]. The Plaintiff's allegations, however, are conclusively refuted by video of the incident. This video evidence demonstrates that the Plaintiff was the violent aggressor in the incident, that the officers responded with a subjectively reasonable level of force, and that the Plaintiff did not lose consciousness when officers took him to the ground. To the contrary, the Plaintiff continued to struggle throughout and bit one of the officers. Further, the video demonstrates that the Plaintiff was not struck in the face. Additionally, the Defendants have presented a forecast of evidence that during a medical screening less than 48 hours after the incident, the Plaintiff denied having sustained any trauma within the past 24 to 48 hours. The nurse who examined him noted only two abrasions on the Plaintiff's forehead and a crack on his lip. A photograph of the Plaintiff that was taken the day after the incident reveals no sign that he was punched in the face or sustained an eye injury.

The Plaintiff has failed to present any forecast of evidence that Defendant Langford used unreasonable force against him. As such, the Plaintiff's claim for excessive force must be dismissed. Further, as no excessive force was used, the Plaintiff's claim that Defendant Thicklin failed to intervene necessarily fails. See Hinkle v. City of Clarksburg, W.Va., 81

F.3d 416, 420-21 (4th Cir. 1996) (concluding that claims derivative of excessive force claim were mooted by jury's verdict finding no excessive force).

Defendants Langford and Thicklin's Motion for Summary Judgment is therefore granted on the Plaintiff's claims of excessive force and failure to intervene.

### C. Deliberate Indifference to a Serious Medical Need

To state a claim for deliberate indifference to a serious medical need, a plaintiff must show that he had serious medical needs and that the defendant acted with deliberate indifference to those needs. Heyer v. United States Bureau of Prisons, 849 F.3d 202, 210 (4th Cir. 2017) (citing Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (internal quotation marks omitted). To constitute deliberate indifference to a serious medical need, "the treatment [a prisoner receives] must be so grossly incompetent, inadequate, or excessive to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), *overruled on other grounds by* Farmer v. Brennan, 511 U.S. 825, 825 (1994).

The Plaintiff alleges that Defendants Langford and Thicklin were deliberately indifferent to a serious medical need by failing to provide medical care after the Plaintiff's head struck the ground so hard that he lost consciousness during the use of force incident, and that they lied in their reports that the Plaintiff refused medical care. [Doc. 21: Second Am. Compl. at 10].

The Plaintiff has failed to forecast any evidence that he suffered a serious medical need as a result of the use of force incident. His claim that he lost consciousness upon striking the ground is conclusively refuted by the video of the incident which shows that he did not lose consciousness when he struck the ground, but rather remained conscious and combative. The lack of any serious medical need is further confirmed by the Plaintiff's subsequent statement to Nurse Parker denying that he experienced any trauma within the past 24 to 48 hours. Further, Nurse Parker's report shows that the Plaintiff had only two minor abrasions to his forehead and a crack at the corner of his lip at the time she examined him. Assuming *arguendo* that the minor abrasions and cracked lip resulted from the use of force incident, these injuries do not rise to the level of a serious medical need. See Martin v. Gentile, 849 F.2d 863, 781 (4th Cir. 1988) (injury that was not bleeding and did not require sutures or painkillers, such as a glass splinter in the hand, is

not a serious medical need); Gray v. Farley, 13 F.3d 142, 146 (4th Cir. 1993) (finding no deliberate indifference for treatment of minor injuries including a superficial scalp laceration); Ames v. Mallow, 2017 WL 839524 (D. Md. March 3, 2017) (small abrasion to prisoner's arm was a minor injury that did not rise to the level of a serious medical need). The Plaintiff's deliberate indifference claim thus fails regardless of whether the Plaintiff refused medical care after the use of force incident. The Plaintiff has failed to demonstrate the existence of any genuine dispute of a material fact that Defendants Langford and Thicklin were deliberately indifferent to a serious medical need with regard to the use of force incident. Therefore, Defendants Langford and Thicklin's Motion for Summary Judgment is granted on the Plaintiff's claim of deliberate indifference to a serious medical need based on the alleged denial of medical care after the use of force incident.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendants Langford and Thicklin's Motion for Summary Judgment [Doc. 36] is **GRANTED**, and the Plaintiff's claims against these Defendants are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Signed: August 11, 2021

Martin Reidinger
Chief United States District Judge